WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Del Carmen Meza, | No. CV-14-08022-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Maria Del Carmen Meza appeals the Acting Commissioner of Social Security's (the "Commissioner") denial of disability benefits. The Court now rules on her appeal. (Doc. 12).

I.    **BACKGROUND**

A.    **Procedural Background**

On May 27, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Tr. 14). Plaintiff also filed a Title XVI application for supplemental security income on May 31, 2010. (*Id.*) In both applications, Plaintiff alleged a disability onset date of August 1, 2008. (*Id.*) The Commissioner denied benefits and supplemental security income on September 9, 2010, (Tr. 65–66, 113), and Plaintiff requested reconsideration, (Tr. 117). Plaintiff's reconsideration was denied on April 12, 2011, (Tr. 79–80), and she appealed.

On October 5, 2012, Administrative Law Judge ("ALJ") Kathleen Mucerino held a hearing on Plaintiff's claims. (Tr. 41–64). Following the ALJ's unfavorable decision, (Tr. 14–27), Plaintiff appealed to the Appeals Council. After the Appeals Council denied

Plaintiff's request for review, (Tr. 1), Plaintiff filed an appeal with this Court (Docs. 1, 12). Plaintiff contends that the ALJ wrongly (1) misinterpreted evidence to Plaintiff's detriment; (2) discredited the opinion of treating physician Farhat Khan, M.D.; (3) discredited Plaintiff's subjective complaints of pain; and (4) failed to equate Plaintiff's back problems to impairment Listing 1.04C. (Doc. 12 at 2).

## B. Medical Background

The Court will briefly summarize Plaintiff's medical history, which is thoroughly recounted in the administrative record. Plaintiff first sought medical attention for neck, back, shoulder, foot, and leg pain in August 2008 from M.A. Nayer, M.D. (Tr. 595). Dr. Nayer conducted numerous tests on Plaintiff in an attempt to diagnose the source of her pain; however, only one of the tests revealed an abnormality—cervical spondylosis on October 30, 2008. (Tr. 593). Plaintiff continued seeing Dr. Nayer through 2011. (Tr. 561). Plaintiff also periodically saw Ricardo Alfafara, M.D. for chest pains. (Tr. 299–320). In August 2008, Dr. Alfafara noted that Plaintiff had a "history of claudication of the lower extremities" and in October 2008, he stated that he suspected Plaintiff had claudication. (Tr. 308–09).

Plaintiff began seeing Dr. Farhat Khan regularly in 2009 for a variety of ailments. In May 2009, Dr. Khan diagnosed Plaintiff with migraine headaches, low back pain, Bence-Jones protenia, and osteoarthritis. (Tr. 374). An x-ray of her spine indicated moderate disc space narrowing. (Tr. 377). In August 2009, Dr. Khan noted that Plaintiff complained of hand pain, (Tr. 382), and in February 2010, he diagnosed her with controlled diabetes mellitus, asthma, and hypercholesterdemia. (Tr. 394, 397). In March 2010, Dr. Khan diagnosed Plaintiff with reflux esophagitis, melena, and fibromyalgia. (Tr. 400). In April 2010 Dr. Khan diagnosed her with essential hypertension. (Tr. 406). In May 2010, he diagnosed her with "knee strain/sprain" and myalgia, (*Id.*), and lastly, in July 2010, Dr. Khan diagnosed Plaintiff with localized osteoarthritis, (Tr. 409). However, at each of Plaintiff's appointments with Dr. Khan, Dr. Khan concluded that Plaintiff's conditions were satisfactory and stable. Plaintiff continued to see Dr. Khan for these

conditions through 2012. (Tr. 748–50).

On July 13, 2010, Plaintiff had a medial parapatellar resection of the plica on left knee. (Tr. 448). Several days after the surgery, Plaintiff's physician stated that her knee "could not look any better" and that she should return to her normal activities. (*Id.*) On September 30, 2010, Plaintiff underwent a left shoulder arthroscopy/open subacromial decompression to remedy a rotator cuff tear. (Tr. 421). Again, Plaintiff's doctor believed the surgery was successful and instructed Plaintiff to return to her normal activities. (Tr. 446). After these procedures, in October 2010, Dr. Khan completed a medical assessment of Plaintiff's ability to do work related activities. (Tr. 438). In the questionnaire, Dr. Khan opined that Plaintiff could sit for 2 hours in an 8-hour workday and stand or walk for 2 hours in an 8-hour workday. (Tr. 438). He also opined that Plaintiff could occasionally lift and carry up to five pounds and could never lift or carry any weight above five pounds. (*Id.*) Plaintiff could never stoop, squat, crawl, climb, or reach, but could occasionally grasp, finely manipulate, and could frequently pull and push controls. (Tr. 439). Plaintiff could not use her feet for repetitive movements and was fully restricted from unprotected heights, being around moving machinery, driving automobile equipment, exposure to dust, fumes, and gases, and exposure to marked changes in temperature or humidity. (*Id.*) Dr. Khan concluded that Plaintiff's impairments were moderately severe and that Plaintiff was limited by her moderate to moderately severe pain and fatigue. (Tr. 440).

In January 2011, Plaintiff attended a consultative psychiatric examination with Doris Javine, Ph.D. (Tr. 457). During the examination Plaintiff stated her daily activities included the following: taking care of her two daughters, ages 10 and 8; brushing her teeth and hair; washing her face; washing the dishes; putting things away; doing the laundry; picking her daughters up from school; cooking; making the beds; changing the sheets; and attending church twice a week. (Tr. 457). Plaintiff also stated that she occasionally takes her daughters to the park, visits friends, and plays cards. (Tr. 458). Dr. Javine opined that Plaintiff suffered from adjustment disorder with mood disturbance and

1   bereavement. (Tr. 460). However, Dr. Javine noted that Plaintiff's condition would not
2   cause any limitations. (Tr. 462).

3       In April 2011, Plaintiff underwent a third surgery—arthroscopic subacromial
4   decompression—on her left shoulder. (Tr. 552). She continued to experience shoulder
5   pain for several months after the surgery and ultimately underwent another surgery, a
6   manipulation under anesthesia of adhesive capsulitis, on her left shoulder on July 5, 2011.
7   (Tr. 549). After her fourth surgery, Plaintiff's doctor noted that her shoulder had almost
8   100% flexion and had "done remarkably well." (*Id.*) Plaintiff had a fifth surgery—an L5-
9   S1 fusion and redo laminectomy—on August 22, 2011. (Tr. 528).

10      Dr. Khan continued to see Plaintiff during 2011 and 2012. From October 2011 to
11  December 2011, Dr. Khan's physical examinations of Plaintiff did not reveal any
12  abnormalities. (Tr. 688–702). However, during that time, Dr. Khan diagnosed Plaintiff
13  with adjustment disorder with depressed mood, mixed hyperlipidemia, neck sprain and
14  strain, pain in shoulder joint, and sprain and strain in knee and leg. (Tr. 701). During
15  2012 Dr. Khan diagnosed Plaintiff with lumbar sprain and strain, but his physical
16  examinations of Plaintiff did not indicate any abnormalities. (Tr. 688–99).

17      On July 25, 2012, Dr. Khan completed a second medical assessment of ability to
18  do work related activities questionnaire. (Tr. 748–50). Dr. Khan opined that Plaintiff
19  could sit less than 1 hour in an 8-hour workday and could stand or walk less than 1 hour
20  in an 8-hour workday. (Tr. 748). He further opined that she could never lift or carry five
21  pounds or more and could never squat, crawl, or reach. (Tr. 748–49). Plaintiff could
22  occasionally use her right hand for grasping and could frequently do so with her left
23  hand. (Tr. 479). She could occasionally use both hands for pushing or pulling controls.
24  (*Id.*) Plaintiff could never use her right hand for fine manipulation but could occasionally
25  do so with her left hand. (*Id.*) Dr. Khan stated that Plaintiff could not use her feet for
26  repetitive movements and was totally restricted in activities involving unprotected
27  heights, being around moving machinery, driving automobile equipment, exposure to
28  dust, fumes, and gases, and exposure to marked changes in temperature or humidity. (Tr.

749).

## II.   DISABILITY

### A.   Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### B.   Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1.   First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2.   If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple

instructions, responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3.     Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ makes a finding regarding the claimant's "residual functional capacity based on the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most she can still do despite all of her impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4.     At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares his "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work she previously did, then the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5.     At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(1). In making this determination, the ALJ considers a claimant's "residual functional capacity" and her "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the Commissioner has the burden of proving that the claimant can perform other work.

1    *Reddick*, 157 F.3d at 721.

2         In evaluating a claimant's disability under this five-step process, the ALJ must

3    consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. §

4    404.1520b. This includes medical opinions, records, self-reported symptoms, and third-

5    party reporting. 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06-3p, 2006 WL

6    2329939, at *3–4 (Aug. 9, 2006).

7         **C.     The ALJ's Evaluation under the Five-Step Process**

8         The ALJ applied the five-step sequential evaluation process using Plaintiff's

9    alleged onset date of August 1, 2008. (Tr. 14). At step one of the sequential evaluation

10   process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

11   her alleged onset date of August 1, 2008. (Tr. 16). The ALJ then found Plaintiff to have

12   the following severe impairments: "osteoarthritis and status post knee surgery, left

13   shoulder surgery, and lumbar fusion and laminectomy." (*Id.*) At step three, the ALJ noted

14   that none of these impairments met or medically equaled one of the listed impairments

15   that would result in a finding of disability. (Tr. 21). The ALJ then determined that

16   Plaintiff's residual functional capacity ("RFC") from August 1, 2008 to November 2011

17   was the ability to:

18               perform light work . . . except the claimant is able to
19               stand/walk for 6 hours in an 8-hour workday. She can sit for 6
                 hours in an 8-hour workday. She requires an at will
20               sit/stand/walk option. She can lift and/or carry 20 pounds
                 occasionally and 10 pounds frequently. She can frequently
21               use her upper extremities for fine and gross manipulations,
                 feel, and reach in all directions including overhead.

22   (Tr. 21–22). The ALJ determined Plaintiff's RFC after November 2011 to be the same as

23   her RFC from August 1, 2008 to November 2011, except that Plaintiff is "able to

24   ambulate with the assistance of a cane." (Tr. 22). Under step four, the ALJ determined

25   that Plaintiff was capable of performing her past relevant work as a receptionist and

26   personnel clerk or administrative assistant. (Tr. 25). The ALJ concluded that Plaintiff was

27   not disabled. (Tr. 26–27).

28        **D.     Standard of Review**

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation marks omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Under this standard, the Court will uphold the ALJ's findings if her findings are supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation omitted).

## III.   ANALYSIS

Plaintiff appeals the ALJ's decision for four reasons. Plaintiff argues that the ALJ wrongly (1) misinterpreted evidence to Plaintiff's detriment, (2) discredited the opinion of treating physician Farhat Khan, (3) discredited Plaintiff's subjective complaints of pain, and (4) failed to equate Plaintiff's back problems to impairment Listing 1.04C. (Doc. 12 at 2).

### A.   Whether the ALJ Erred by Misinterpreting Evidence to Plaintiff's Detriment

Plaintiff asserts that the ALJ misinterpreted evidence to Plaintiff's detriment. (Doc. 12 at 7). Plaintiff argues that the evidence indicates that she underwent five surgical procedures between July 1, 2010 and August 31, 2011 and that "[r]egardless of whether the surgeries improved [Plaintiff's] ability to return to work . . . [Plaintiff] does

meet disability criteria for the 14-month period," during which those surgeries occurred. (Doc. 12 at 8).

To qualify for disability benefits, a claimant must have an impairment that "has lasted or can be expected to last for a continuous period of not less than 12 months," and is severe enough to prevent the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423(d)(1)(A); *see Barnhart v. Walton*, 535 U.S. 212, 218 (2002) ("[T]he 'impairment' must last 12 months and also be severe enough to prevent the claimant from engaging in virtually any 'substantial gainful work.'").

Plaintiff underwent five surgical procedures from July 1, 2010 to August 31, 2011. (Tr. 448, 430, 552, 549, 528). First, she had surgery on her left knee on July 13, 2010. (Tr. 448). In a follow-up appointment ten days after the surgery, Plaintiff's doctor stated that Plaintiff's "knee could not look any better," and concluded that Plaintiff did not need formal physical therapy and could "go about her normal activities." (*Id.*) Thus, Plaintiff could have engaged in substantial gainful activity almost immediately after her knee surgery. Second, on September 30, 2010, Plaintiff underwent surgery on her left shoulder. (Tr. 430). The out-patient surgery discharge instructions that Plaintiff received after her shoulder surgery stated that Plaintiff should "[r]esume normal activities tomorrow" and remove her sling and dressing in two days. (Tr. 417). Accordingly, Plaintiff's recovery time for this surgery was minimal as well. Third, Plaintiff had another surgery on her left shoulder in April 2011. (Tr. 552). Plaintiff's recovery period after the surgery was significantly longer than that of her previous two surgeries. She continued to experience pain after the surgery for several months, (Tr. 549–552), and ultimately underwent her fourth surgery, a manipulation under anesthesia of adhesive capsulitis of her left shoulder, on July 5, 2011. (Tr. 549). Eight days after the manipulation procedure, Plaintiff's doctor remarked that Plaintiff's shoulder had "done remarkably well." (Tr. 549). The doctor also noted that Plaintiff's left arm had almost "complete 100% flexion," and the "[n]eurovascular status of the left upper extremity [was] normal." (*Id.*) Furthermore, the doctor stated that Plaintiff had "no pain over the

1   rotator cuff interval." (*Id.*) Lastly, on August 22, 2011, Plaintiff underwent an L5-S1

2   fusion and redo laminectomy. (Tr. 528). During a post-operation check-up on September

3   2, 2011, Plaintiff's doctor told Plaintiff that she could begin gradually returning to her

4   normal activities. (Tr. 542).

5       Plaintiff's recovery time after her July 2010 knee surgery and September 2010

6   shoulder surgery was minimal. Plaintiff could have engaged in substantial gainful activity

7   almost immediately after both of those surgeries. Thus, even assuming Plaintiff could not

8   have engaged in substantial gainful activity after her third surgery in April 2011, Plaintiff

9   has not demonstrated that she was unable to engage in substantial gainful activity for a

10  continuous 12 months. Accordingly, the ALJ's conclusion that Plaintiff did not

11  experience a disability lasting for a continuous 12 month period between July 1, 2010 and

12  August 31, 2011, was not based on a misinterpretation of the evidence.

13      **B.    Whether the ALJ Erred in not Giving Significant Weight to Dr. Khan's Opinion**

14      Petitioner contends that the ALJ improperly rejected the assessment of Dr. Khan,

15  Plaintiff's treating physician. (Doc. 12 at 9). Specifically, Plaintiff argues that Dr. Khan's

16  assessment of Plaintiff's work capacity was "uncontroverted in the record" and therefore,

17  the ALJ erred by rejecting Dr. Khan's opinion. (*Id.* 12 at 9). Plaintiff asserts that Dr.

18  Khan's opinion is entitled to controlling weight. (*Id.* at 9–10). In this case, the ALJ did

19  not give significant weight to Dr. Khan's opinion because: (1) his opinion was based on

20  Plaintiff's subjective complaints, (2) he did not provide a time frame for the effects of

21  Plaintiff's ailments, (3) his opinion was inconsistent with his own physical examinations

22  of Plaintiff, and (4) his opinion is not supported by the bulk of the record. (Tr. 25).

23      A treating physician's opinion is only given controlling weight if it is "well-

24  supported by medically acceptable clinical and laboratory diagnostic techniques and is

25  not inconsistent with substantial evidence." 20 C.F.R. § 416.927(c)(2); *Orn*, 495 F.3d at

26  631; *see also* SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). A decision on whether a

27  medical opinion is well supported "is a judgment that adjudicators must make based on

28  the extent to which the opinion is supported by medically acceptable clinical and

laboratory techniques." SSR 96-2p, 1996 WL 374188, at *2. An ALJ is not obligated to credit medical opinions that are conclusory and unsupported by the medical documentation. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). If a treating physician's medical opinion is not well supported, then it is not given controlling weight, but it is not entirely rejected. SSR 96-2p, 1996 WL 374188, at *4. When a treating physician's opinion is not given controlling weight, the ALJ applies several factors to determine how much weight to give the opinion. These factors include: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the physician is a specialist giving an opinion within his specialty. 20 C.F.R. § 404.1527(c)(2)(i), (c)(2)(ii), (c)(3)–(c)(6).

An ALJ is not required to accept the medical opinion of any physician, including a treating physician, if that physician's opinion is "brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. Dr. Khan did not include any additional information or make any notes supporting his conclusions on either of the medical assessment of ability to do work related activities questionnaires. (Tr. 438–39, 748–50). Moreover, aside from a June 2009 x-ray of Plaintiff's spine showing moderate disc space narrowing, Dr. Khan relied primarily on Plaintiff's subjective complaints in diagnosing and treating Plaintiff and in forming his medical opinion. (Tr. 25). As the ALJ determined that Plaintiff's subjective complaints were not entirely credible, it was reasonable for the ALJ to discount Dr. Khan's opinion that was based on Plaintiff's less than credible statements. *See Bray*, 554 F.3d at 1228. The ALJ also noted that Dr. Khan did not indicate when his assessment of Plaintiff's limitations began or when it ended. (Tr. 25).

Additionally, a discrepancy between treatment notes and a medical opinion is "a clear and convincing reason for not relying on the doctor's opinion regarding" a

claimant's limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ also discounted Dr. Khan's opinion because his opinion was inconsistent with his own physical examinations of Plaintiff. (Tr. 25). Dr. Khan's physical examinations of Plaintiff did not reveal any abnormalities. (Tr. 688–707). Moreover, the ALJ noted that Dr. Khan's regular examinations "generally revealed no significant findings." (Tr. 18) (citing Tr. 252–360, 372–410, 453–54, 470–94, 521–547, 609–53, 688–474).

Furthermore, the ALJ stated that Dr. Khan's opinion was not supported by the record. (Tr. 25). The ALJ explained that the record indicates Plaintiff's prognosis for recovery after her knee surgery was good and Dr. Khan himself consistently noted that Plaintiffs conditions were "satisfactory and stable." (Tr. 23) (citing Tr. 372–410, 444). Moreover, the ALJ notes that after Plaintiff's second shoulder surgery she had 100% flexion and treating sources indicated Plaintiff was "doing relatively well." (*Id.*) (citing 548–49). Additionally, Plaintiff had a good range of motion in the lumbosacral area, knees, and metatarasophalaneals, (*Id.*) (citing 710, 712, 720, 723), and a full range of motion in her neck "without pain, mass, JVD, bruit, or lymphadenopathy." (*Id.*) (citing 321–60, 372–410, 561–608, 654–87). Accordingly, the ALJ provided sufficient reasons for her conclusion and did not err in discounting Dr. Khan's opinion.

### C.   Whether the ALJ Properly Rejected Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ failed to provide specific findings showing clear and convincing reasons for discrediting Plaintiff's subjective complaints. (Doc. 12 at 11–12). Specifically, Plaintiff alleges that the ALJ did not adequately cite to any valid reason for discrediting Plaintiff's testimony such as her "reputation for [un]truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [s]he complains." (Doc. 12 at 11). Plaintiff also contends that the ALJ improperly concluded that Plaintiff's complaints were not proportional to the medical evidence and asserts that the treating physicians' "opinions match her descriptions and capabilities." (Doc. 12 at 11–12).

The ALJ concluded that although Plaintiff's impairments could reasonably be expected to produce Plaintiff's alleged symptoms, Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible." (Tr. 22–23). The ALJ gave the following reasons for discrediting Plaintiff's subjective complaints: (1) Plaintiff's allegations were inconsistent with the clinical history, (2) Plaintiff admitted to Dr. Javine that she stopped working because of the economy, and (3) Plaintiff's allegations were inconsistent with her reported daily activities. (Tr. 23–25).

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007).

> First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Burnell*, 947 F.2d at 344). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce the claimed pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96–7p at 2; *Carmickle*, 533 F.3d at 1160–61 ("reasonable inference, not a medically proven phenomenon"). If the claimant fails this threshold test, then the ALJ may reject the claimant's subjective complaints. *See Smolen*, 80 F.3d at 1281 (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d 341))

> Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283–84 ("Once a claimant meets [step one] and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.")); *see also, e.g., Lingenfelter*, 504 F.3d at 1036 (if

1  the ALJ has found no evidence of malingering, then the ALJ
2  may reject the claimant's testimony "only by offering
   specific, clear and convincing reasons for doing so.").

3  *Trembulak v. Colvin*, No. CV-12-02420-PHX-JAT, 2014 WL 523007, at *8–9 (D. Ariz.

4  Feb. 10, 2014).

5         While an ALJ may not reject a claimant's subjective complaints solely because of

6  a lack of objective medical evidence to fully corroborate the alleged severity of pain, *see*

7  *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001), the lack of such evidence

8  may support the ALJ's finding that a claimant is not credible. *See Batson*, 359 F.3d at

9  1197.  The ALJ explained that the treatment records "reveal claimant reporting to treating

10 sources that she felt fine, she felt good, and that medication helped with her overall pain."

11 (Tr. 23) (citing Tr. 321–46, 561–608, 654–87). The ALJ cited notes from treating

12 physicians from 2010 and 2011 which state that Plaintiff's headaches are controlled with

13 medication, (*Id.*) (citing Tr. 565, 569, 575, 577), and that Flector patches seem to help her

14 back pain. (*Id.*) (citing Tr. 569). The ALJ also cited treatment reports from 2010

15 indicating that Voltaren gel seems to help Plaintiff's knee pain and braces help her carpal

16 tunnel. (*Id.*) (citing Tr. 575). Furthermore, the ALJ noted that treatment records indicate

17 that shoulder surgery "has helped [Plaintiff] significantly." (*Id.*) (citing Tr. 443).

18 Furthermore, ALJ cited numerous other reports from treating physicians that state

19 Plaintiff had full motion in her knee and no knee pain, (*Id.*) (citing Tr. 446–48), had no

20 difficulty ambulating or with gait, (*Id.*) (citing Tr. 456–63), and had normal results from

21 radiology studies conducted on her hands and knees. (*Id.*) (citing Tr. 450). Therefore, the

22 ALJ provided sufficiently specific reasons to support his conclusion that Plaintiff's

23 subjective complaints are inconsistent with the bulk of the medical record.

24         The ALJ also notes that Plaintiff lacks credibility because she "admitted to the

25 consultative psychologist," Dr. Javine, that she stopped working due to the economy, not

26 because of her condition. (Tr. 24) (citing Tr. 195). This is inconsistent with Plaintiff's

27 testimony in the hearing before the ALJ, during which Plaintiff stated that she stopped

28 working in 2008 because she was "really sick," "couldn't do it anymore," and was "sick

1    at home [more] than at the store." (Tr. 46). Accordingly, the ALJ adequately cited to

2    inconsistencies in Plaintiff's testimony.

3            Next, Plaintiff argues that the ALJ erred in assessing Plaintiff's daily activities by

4    concluding that she has the capability to perform full-time work. (Doc. 12 at 11–12).

5    Specifically, Plaintiff asserts that the ALJ erred because Plaintiff's activities are not

6    "easily transferable to the work environment where it might be impossible to rest

7    periodically or take medication," and Plaintiff's tasks "are not constantly performed, as

8    would be in a work-place job." (Doc. 12 at 12). However, Plaintiff fails to show that the

9    ALJ's conclusion is inconsistent with these activities. An ALJ may consider daily living

10   activities in his credibility analysis. *See* 20 C.F.R. § 401.1529(c)(3)(i); *see, e.g.*, *Morgan

11   v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to

12   "fix meals, do laundry, work in the yard, and occasionally care for his friend's child"

13   serves as evidence of ability to work).

14           The ALJ relied on a psychiatric evaluation conducted by Dr. Javine on January 10,

15   2010 during which Plaintiff explained that her daily activities include living with and

16   taking care of her two daughters, ages 9 and 11, fixing the girls' hair, making their

17   lunches, and picking them up from school. (Tr. 24; Tr. 457). Plaintiff also told Dr. Javine

18   that she fixes her own hair, washes her face, brushes her teeth, washes the dishes, puts

19   things away, and does the laundry. (Tr. 24; Tr. 457). Moreover, Plaintiff told Dr. Javine

20   that she cooks, makes the beds, changes the sheets, attends church twice a week, plays

21   cards, and visits friends. (Tr. 24; Tr. 457–58).

22           Accordingly, the ALJ did not err in finding Plaintiff not to be credible in the

23   severity of her symptoms. The ALJ's conclusion was adequately supported by the

24   discrepancies between Plaintiff's subjective complaints and the medical record, the

25   discrepancies in Plaintiff's testimony, and Plaintiff's own objective description of her

26   daily activities.

27       **D.    Whether Plaintiff has an Impairment that Meets or Equals Listing
                 1.04C.**

28   Lastly, Plaintiff contends that "there is a significant possibility that [her] back

- 15 -

1    problems meet" or equal an impairment listed in "The Listing of Impairments" ("the

2    Listings"). (Doc. 12 at 13). Specifically, Plaintiff argues that her "back problems" are at

3    least equal to Listing 1.04C. (*Id.*) The ALJ concluded that Plaintiff's "lumbar fusion and

4    laminectomy does not satisfy Listing 1.04 (entitled *Disorders of the spine*)." (Tr. 21).

5         A mere diagnosis of a listed impairment or symptoms that could be caused by a

6    listed impairment, is insufficient to meet or equal a listed impairment. *See* 20 C.F.R.

7    404.1525(d). To establish that an impairment meets or equals a listed impairment, a

8    claimant must show that he "satisfies all of the criteria of that listing, including any

9    relevant criteria in the introduction." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). The

10   claimant must demonstrate symptoms, signs, and laboratory findings "at least equal in

11   severity and duration" to the characteristics of a relevant listed impairment. "A

12   generalized assertion of functional problems . . . . is not enough to establish disability at

13   step three." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. §

14   404.1526). An ALJ need not "state why a claimant failed to satisfy every different section

15   of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)

16   (finding ALJ did not err in failing to state what evidence supported his conclusion, or

17   discuss why, the claimant's impairments did not meet or exceed Listings).

18        Plaintiff claims that her "back problems" meet or equal Listed Impairment 1.04C,

19   termed "Disorders of the Spine." (Doc. 12 at 13). To meet or equal Listed Impairment

20   1.04C, Plaintiff must establish that a nerve root or the spinal cord is compromised with

21   (1) pseudoclaudication, demonstrated by findings on appropriate medically acceptable

22   imaging, and (2) chronic nonradicular pain and weakness, which results in (3) an inability

23   to ambulate effectively. 20 C.F.R. Part 404, Subpt. P, App. 1, 1.04C. Plaintiff asserts that

24   the medical record demonstrates has a history of "claudication of the lower extremities . .

25   . . feet and leg pain, numbness, and tingling . . . an antalgic gait . . . . and difficulty

26   walking." (Doc. 12 at 13–15).

27        The ALJ determined that Plaintiff did not have an impairment that met or

28   medically equaled the criteria of any listed impairment. The ALJ specifically found that

- 16 -

1    Plaintiff's lumbar fusion and laminectomy did not meet Listing 1.04 because "there is no
2    significant evidence that [Plaintiff] has any neurological deficits or inability to ambulate
3    effectively." (Tr. 21). The ALJ's conclusion is not in error. Although Plaintiff asserts that
4    the objective medical evidence in the record supports a finding that her physical
5    impairments meet the criteria of Listing 1.04, none of the evidence actually does so.
6    Plaintiff states that Dr. Alfarfara noted a "suspicion of claudication" and a history of
7    "claudication in the lower extremities." (Doc. 12 at 13 citing Tr. 308–09).

8          However, Plaintiff must establish pseudoclaudication through "appropriate
9    medically acceptable imaging." 20 C.F.R. Part 404, Subpt. P, App. 1, 1.04C. Mere
10    suspicion of claudication is insufficient. Additionally, Plaintiff does not cite to any
11    medical report or treatment note that contains the phrase "chronic nonradicular pain" or
12    any evidence thereof. Plaintiff also points to her own subjective complaints and Dr.
13    Khan's opinion to support her argument. However, as noted above, symptoms alone do
14    not justify a finding of medical equivalence, let alone a finding that a Listing has been
15    met. Moreover, as discussed previously, the ALJ properly discounted Dr. Khan's opinion
16    and found Plaintiff's subjective complaints were not credible. Plaintiff's generalized
17    assertion of pain and "back problems" is insufficient to establish an impairment that
18    meets or equals Listing 1.04C.

19    **IV.    CONCLUSION**

20          The ALJ's decision in this case is supported by substantial evidence in the record.
21    /
22    /
23    /
24    /
25    /
26    /
27    /
28    /

For the foregoing reasons,

**IT IS ORDERED** that the decision of the Administrative Law Judge is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 10th day of November, 2014.

James A. Teilborg
Senior United States District Judge